JAMES P. DIWIK (Bar No. 164016)
james.diwik@sdma.com
JOEL M. LONG (Bar No. 226061)
joel.long@sdma.com
SEDGWICK, DETERT, MORAN & ARNOLD LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA  94105-1008
Telephone:    415.781.7900
Facsimile:     415.781.2635

Attorneys for Plaintiff
First National Insurance Company of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>HSR GENERAL ENGINEERING CONTRACTORS, INC. doing business as HSR, INC., a California corporation; ROSS KEITH DORSA, a California resident; KATHERINE ANN DORSA, a California resident; ROSS KEITH DORSA as trustee of THE DORSA FAMILY REVOCABLE TRUST, ESTABLISHED APRIL 4, 2005, a California trust; and KATHERINE ANN DORSA as trustee of THE DORSA FAMILY REVOCABLE TRUST, ESTABLISHED APRIL 4, 2005, a California trust,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:  (1) BREACH OF CONTRACT; (2) SPECIFIC PERFORMANCE; (3) STATUTORY REIMBURSEMENT; (4) EQUITABLE INDEMNIFICATION; AND (5) MONEY PAID** |

Plaintiff First National Insurance Company of America ("First National") alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.     First National is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in Seattle, Washington.  At all relevant times,

1. First National was qualified to conduct and does conduct business in the State of California, as surety.

2. Upon information and belief, defendant HSR General Engineering Contractors, Inc. doing business as HSR, Inc. ("HSR") is a corporation organized and existing under the laws of the State of California, with its principal place of business in Santa Clara, California.

3. Upon information and belief, defendant Ross Keith Dorsa is an individual residing in Gilroy, California.

4. Upon information and belief, Katherine Ann Dorsa is an individual residing in Gilroy, California.

5. Upon information and belief, Ross Keith Dorsa and Katherine Ann Dorsa are trustees of a trust created and administered in Gilroy, California called The Dorsa Family Revocable Trust, Established April 4, 2005 (the "Trust"). Ross Keith Dorsa and Katherine Ann Dorsa are sued in this action both individually and in their capacities as trustees on behalf of the Trust.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1332 in that there exists a complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. section 1391(a).

## FACTUAL ALLEGATIONS

8. At the request of HSR, Ross Keith Dorsa, Katherine Ann Dorsa, and the Trust (collectively, the "Indemnitors"), First National, as surety, issued the following performance and payment bonds (collectively, the "Bonds") on behalf of HSR, as principal, in connection with the following construction projects located in Northern California:

| **Bond No.** | **Issuance Date** | **Penal Sum** | **Project** |
|---|---|---|---|
| 6500532 | 3/27/08 | $4,877,862 | City of Gilroy Camino Arroyo Bridge Project, Phase II |
| 6500547 | 6/17/08 | $2,269,000 | San Jose/Evergreen Community College District Lake Renovation – Evergreen Valley College |

| | | | |
|---|---|---|---|
| 6576823 | 3/20/09 | $ 757,212 | California Department of Transportation 05-0P8104, 05-SCr-17-7.0/7.3 |
| 6576828 | 4/3/09 | $ 198,894 | City of Lafayette Project No. 014-9676, Mount Diablo Boulevard Multi-Purpose Pathway |
| 6576833 | 5/21/09 | $1,877,809 | Santa Clara Valley Water District Jacques Gulch Restoration Project |
| 6633445 | 6/26/09 | $3,192,308 | Presidio Trust Landfills 8 & 10 and Graded Area 9 Remediation Project |
| 6633459 | 8/25/09 | $ 720,173 | County of San Mateo Coyote Point Bay Trail Improvements (Project No. E4861000) |

9. On or about January 2, 2008, as an inducement and as part of the consideration for First National to issue the Bonds, the Indemnitors executed a General Agreement of Indemnity for Contractors (the "Indemnity Agreement") in favor of First National. A true and correct copy of the Indemnity Agreement is attached hereto as <u>Exhibit A</u>.

10. Previously, some of the Indemnitors executed similar written indemnity agreements in favor of First National as part of the consideration for First National to issue surety bonds on HSR's behalf.

11. Under the Indemnity Agreement, the Indemnitors agreed, upon demand, to pay First National all loss, costs and expenses (including, without limitation, attorney's fees and costs) incurred under the Bonds or as the result of a "Default" under the Indemnity Agreement, with the term "Default" defined to include, among other things, HSR's failure to pay subcontractors and suppliers providing labor and materials to bonded projects and HSR's failure to perform or comply with any provision of the Indemnity Agreement.

12. The Indemnitors also agreed, upon demand, to pay First National funds sufficient to discharge First National from any claim under the Bonds, regardless of whether First National has paid the claim.

13. The Indemnitors also agreed, upon demand, to either procure the discharge of First National from any liability under the Bonds or deposit collateral with First National in an amount sufficient to cover all of First National's exposure under the Bonds.

14. First National has received, investigated and resolved, or in the process of resolving, claims under the Bonds, including multiple payment bond claims by HSR's subcontractors and suppliers on the bonded projects. First National anticipates receiving additional claims under the Bonds.

15. To date, First National has paid undisputed claims under the Bonds totaling in excess of $233,000.

16. In addition, pending claims under the Bonds, including multiple lawsuits filed by HSR's subcontractors and suppliers against HSR and First National (as HSR's payment bond surety), total in excess of $989,000.

17. Despite demand, the Indemnitors have failed and refused, and continue to fail and refuse, to: (a) pay the loss, costs and expenses (including, without limitation, attorney's fees and costs) incurred by First National to date under the Bonds and as the result of HSR's "Defaults" under the Indemnity Agreement; (b) pay First National funds sufficient to discharge First National from the claims under the Bonds; and (c) procure the discharge of First National from any liability under the Bonds or, in the alternative, deposit collateral with First National in an amount sufficient to cover all of First National's exposure under the Bonds.

18. First National has satisfied all conditions precedent to maintaining this action under the Indemnity Agreement and otherwise.

## COUNT I

**(Breach of Contract – All Defendants)**

19. First National realleges and incorporates by reference the allegations contained in Paragraphs 1-18 above.

20. Under the Indemnity Agreement, the Indemnitors agreed, upon demand, to: (a) pay all loss, costs and expenses (including, without limitation, attorney's fees and costs) incurred by First National under the Bonds and as the result of HSR's "Defaults" under the Indemnity Agreement; (b) pay First National funds sufficient to discharge First National from all claims under the Bonds; and (c) procure the discharge of First National from any liability under the

Bonds or, in the alternative, deposit collateral with First National in an amount sufficient to cover all of First National's exposure under the Bonds.

21. The Indemnitors have materially breached the Indemnity Agreement by their failure and refusal, despite demand, to satisfy any of the obligations described in Paragraph 20 above.

22. As a proximate result of the Indemnitors' breach of the Indemnity Agreement, First National has incurred and will continue to incur loss, costs and expenses, including attorney's fees and costs in the prosecution of this action.

## COUNT II

### (Specific Performance – All Defendants)

23. First National realleges and incorporates by reference the allegations contained in Paragraphs 1-22 above.

24. First National has incurred loss, costs and expenses under the Bonds and as the result of HSR's "Defaults" under the Indemnity Agreement. First National also has pending claims under the Bonds, including multiple lawsuits, totaling in excess of $989,000.

25. Despite demand, the Indemnitors have failed and refused to perform their obligations under the Indemnity Agreement.

26. First National is entitled to an order compelling the Indemnitors to specifically perform their obligations under the Indemnity Agreement by taking the following actions: (a) paying First National for all loss, costs and expenses incurred under the Bonds and as the result of HSR's "Defaults" under the Indemnity Agreement; (b) paying First National funds sufficient to discharge First National from all claims under the Bonds; and (c) procuring First National's discharge from all liability under the Bonds or, in the alternative, depositing collateral with First National in an amount sufficient to cover all of First National's exposure under the Bonds.

## COUNT III

### (Statutory Reimbursement – HSR)

27. First National realleges and incorporates by reference the allegations contained in Paragraphs 1-26 above.

28. First National has incurred and will continue to incur loss, costs and expenses, including attorney's fees and costs, as a result of issuing the Bonds and satisfying the principal obligations of HSR.

29. As the principal under the Bonds, HSR is obligated by California Civil Code section 2847 to reimburse First National for all loss, costs and expenses incurred.

## COUNT IV

### (Equitable Indemnification – HSR)

30. First National realleges and incorporates by reference the allegations contained in Paragraphs 1-29 above.

31. First National has incurred and will continue to incur loss, costs and expenses, including attorney's fees and costs, as a result of issuing the Bonds and satisfying the principal obligations of HSR.

32. HSR, as principal, is obligated by law and equity to indemnify First National, as surety, for all such loss, costs and expenses.

## COUNT V

### (Money Paid – HSR)

33. First National realleges and incorporates by reference the allegations contained in Paragraphs 1-32 above.

34. HSR is indebted to First National for money paid, laid out and expended by First National on HSR's behalf with respect to the claims under the Bonds and in satisfaction of HSR's principal obligations.

35. As a proximate result of HSR's failure and refusal to satisfy said indebtedness, First National has been damaged in an amount to be proven at trial.

## REQUEST FOR RELIEF

1. On its first cause of action, First National seeks judgment against the Indemnitors, jointly and severally, as follows:

   a. For monetary damages in excess of $233,000 in an exact amount to be proven at trial.

        b.       For prejudgment interest.

        c.       For attorney's fees and costs incurred in this action.

        d.       For all other relief that this Court deems necessary and proper.

2.       On its second cause of action, First National seeks judgment against the Indemnitors, jointly and severally, as follows:

        a.       For an order compelling the Indemnitors to specifically perform their obligations under the Indemnity Agreement by taking the following actions:  (i) paying First National for all loss, costs and expenses incurred under the Bonds and as the result of the Indemnitors' "Defaults" under the Indemnity Agreement; (ii) paying First National funds sufficient to discharge First National from all claims under the Bonds, which claims presently total in excess of $989,000; and (iii) procuring First National's discharge from all liability under the Bonds or, in the alternative, depositing collateral with First National in an amount sufficient to cover all of First National's exposure under the Bonds, which exposure presently totals in excess of $1,222,000.

        b.       For attorney's fees and costs incurred in this action.

        c.       For all other relief that this Court deems necessary and proper.

3.       On its third, fourth and fifth causes of actions, First National seeks judgment against HSR as follows:

        a.       For monetary damages in excess of $233,000 in an exact amount to be proven at trial.

        b.       For prejudgment interest.

        c.       For attorney's fees and costs incurred in this action.

        d.       For all other relief that this Court deems necessary and proper.

DATED: August 30, 2010    SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: _____
Joel M. Long
Attorneys for Plaintiff
First National Insurance Company of America

# EXHIBIT A



GENERAL AGREEMENT
OF INDEMNITY
FOR CONTRACTORS

Safeco Insurance Companies
Safeco Plaza
Seattle, WA 98185

THIS AGREEMENT is made by the Undersigned in favor of the Safeco Insurance Companies for the purpose of indemnifying them from all loss and expense in connection with any Bonds for which any Safeco Insurance Company now is or hereafter becomes Surety for any of the following as Principal (hereinafter referred to as Contractor): HSR General Engineering Contractors, Inc. dba: HSR, Inc.

In consideration of the execution of any such Bonds for Contractor and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows.

DEFINITIONS: Where they appear in this agreement, the following terms shall be considered as defined in this paragraph:

Contractor: Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interests, whether alone or in joint venture or as members in limited liability companies with others not named herein.

Bond: Any and all bonds, undertakings or instruments of guarantee and any continuation, extension, alteration, renewal or substitution thereof, whether with the same or different penalties, executed by Surety.

Surety: Any one or combination of the following: Safeco Insurance Company of America; General Insurance Company of America; First National Insurance Company of America; Safeco National Insurance Company; American States Insurance Company; American Economy Insurance Company; any person or company joining with any of the aforesaid companies in executing any Bond, executing any Bond at their request or providing reinsurance to them with respect to any Bond and any subsidiaries, successors, and assigns thereof.

Contract: Any contract between Contractor and a third party, the performance of which is guaranteed by any Bond for which Surety is surety.

Default: Contractor shall be deemed to be in default under this agreement in the event it:

(1) Is declared to be in default by the Obligee of any Bond;
(2) Actually breaches or abandons any Contract;
(3) Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
(4) Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
(5) If an individual sole proprietor, dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;
(6) Breaches, fails to perform, or comply with, any provision of this agreement.

INDEMNITY TO SURETY: Undersigned agree to pay to Surety upon demand:

1. All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned, or by reason of the refusal to execute any Bond. In addition the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;
2. An amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefor. Such payment to be the minimum amount of any reserve set by Surety. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond. The Undersigned acknowledge that their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law. The Undersigned confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.
3. Any original, additional or renewal premium due for any Bond.

With respect to claims against Surety:

1. Surety shall have the exclusive right for itself and the Undersigned to determine in its sole and absolute discretion whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2. Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has issued any Bond.
3. Surety's determination in its sole and absolute discretion of the foregoing shall be final and conclusive upon the Undersigned.
4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

SURETY'S REMEDIES IN EVENT OF DEFAULT: In event of default by Contractor, Surety shall have the right, at its sole discretion, to:

1. Take possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond;
2. Take possession of Contractor's or any of Undersigneds' equipment, materials and supplies at the site of the work, or elsewhere, if needed for prosecution of the work, as well as Contractor's office equipment, books and records, computer hardware and software, and utilize the same in completion of the work under the Contract without payment of any rental for such use;
3. Loan or guarantee a loan to Contractor of such money as Surety shall see fit, for the purpose of completing any Contract, or for discharging Contractor's obligations for labor, material, equipment, supplies and other charges, or discharging Surety's liability under any Bond, incurred in connection with any contract;
4. Take such other action as Surety shall deem necessary to fulfill its obligations under any Bond.

S-7096/SA 7/04

Safeco and the Safeco logo are registered trademarks of Safeco Corporation

XDP

Undersigned waive all notice of such default, of the payment of any claim or of the making of any loan to Contractor by Surety. Should Undersigned learn of any claim or suit against Contractor, for which Surety may be held liable, Undersigned shall give prompt notice to Surety of such claim or suit.

Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

**SECURITY TO SURETY:** As collateral security to Surety for the agreement of the Undersigned to repay all loss and expense to Surety, the Undersigned:

1. Assigns to Surety, as of the date of execution of any Bond, and grants a security interest to Surety in all rights of the Contractor in, or in any manner growing out of:
   a. Any Contract or modification thereof;
   b. Any subcontract or purchase order and against any legal entity and its surety who has contracted with Contractor to furnish labor, materials, equipment and supplies in connection with any Contract;
   c. Monies, Contract Balances due or to become due Contractor on any Contract, including all monies earned or unearned which are unpaid at the time of notification by Surety to the Obligee of Surety's rights hereunder;
   d. Any actions, causes of action, claims or demands whatsoever which Contractor may have or acquire against any party to the Contract, or arising out of or in connection with any Contract including but not limited to those against obligees and design professionals and any surety or sureties of any obligee, and Surety shall have the full and exclusive right, in its name or in the name of the Contractor, but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of action, claims or demands;
   e. Any and all rights, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion of any bonded work;
   f. All monies due or to become due to Contractor on any policy of insurance relating to any claims arising out of the performance of any Contract or to premium refunds, including, but not limited to, builders risk, fire, employee dishonesty or workers' compensation policies.
   g. All supplies, tools, plants, material, inventory, and equipment (whether completely manufactured or not), wherever located, which have been or hereafter may be purchased, used, or acquired for use, entirely or partly, in connection with or to be incorporated into the matter that is the subject of any Contract; and
   h. All amounts that may be owing from time to time by Surety to Contractor or any of the undersigned in any capacity including, without limitation, any balance or share belonging to such Contractor or any of the undersigned or any deposit or other account with Surety, which lien and security interest will be independent of any right of setoff which Surety may have.

   The Surety agrees to forbear exercising the rights granted to it in (a) through (h) until there is a Default under this agreement;

2. Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and authority in event of Contractor's default to:
   a. Sign the name of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of this agreement;
   b. Dispose of performance of any Contract by subletting it in Contractor's name or otherwise;
3. Authorize Surety to join any and all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Contractor;
4. Agree that all monies earned by Contractor under any Contract are trust funds, whether in the possession of Contractor or otherwise, for the benefit of, and for payment of Contractor's obligations for, labor, material, and supplies furnished to Contractor in performance of such Contract for which Surety would be liable under any Bond on such Contract, and the performance of Contractor's or Surety's obligations to any Obligee on such Contract;
5. Agree that this agreement may at any time be completed and filed by Surety in such a manner that it will qualify as a financing statement under the applicable provisions of any statute of any state which has adopted The Uniform Commercial Code, and that Surety may add such schedules to this agreement, describing specific items of security covered hereunder as shall be necessary under such statutes.

**GENERAL PROVISIONS:**
1. Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety even though any such assent by the Surety does or might increase the liability of the Undersigned.
2. Surety has the right to decline to execute, provide or procure any bond requested by Contractor. If Surety does execute, provide or procure the execution of a bid bond or proposal bond, or agrees or consents to provide such contract of suretyship, Surety retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid proposal or tender to which the bid proposal bond or agreement or consent to provide such contract of suretyship is given.
3. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation. The security interest, trust, and other rights granted herein will not be deemed a waiver of Surety's equitable subrogation rights or other rights, said security in rights being in addition to the rights of exoneration, subrogation, and other rights to which Surety is entitled to under law or in equity.
4. Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining, copying or reproducing them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.
5. The Undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).
6. Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.
7. In case the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.
8. Execution by Contractor or any of the Undersigned of any application for any Bond or of any other agreement of indemnity in behalf of Contractor, or the taking of Indemnity of any other person by Surety with respect to any Bond of Contractor, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this agreement.
9. The Undersigned waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety under this agreement, at law or in equity, have been satisfied in full.

S-7098/SA 7/04                          Page 2 of 3

10. The rights and remedies afforded to the Surety by the terms of this agreement and the terms themselves may not be waived or modified orally and no written change or modification shall be effective until signed by an employee of the Surety.
11. This agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety.
12. All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes.
13. The Undersigned has relied upon its own due diligence in making its own independent appraisal of Contractor and its business and financial condition, will continue to be responsible for making its own independent appraisal of such matters, and has not relied upon and will not hereafter rely upon Surety for information. Surety has no duty to inform any of the undersigned Indemnitors of the financial condition or other affairs related to Contractor.
14. The Undersigned shall remain responsible to Surety under this Agreement regardless of any changes in the relationship of the Undersigned with Contractor.

**TERMINATION:** This agreement is a continuing obligation of the Undersigned unless terminated as provided in this paragraph. An Undersigned desiring to terminate liability as to future Bonds of Contractor must:
1. Give written notice to Surety at PO BOX 34526 Seattle, WA 98124-1526, by certified or registered mail, of such termination;
2. State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.
3. It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

After the effective date of termination, the Undersigned giving notice shall be liable hereunder for:
1. Bonds executed or authorized prior to such date, and renewals and extensions thereof;
2. Bonds executed pursuant to a bid or proposal bond executed or authorized prior to such date, and renewals and extensions thereof.

Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

EXECUTED this 2nd day of January, 2008

Attest: Katherine Ann Dorsa, Vice President

x Katherine Ann Dorsa, Individually

HSR General Engineering Contractors, Inc. dba: HSR, Inc.

By: Ross Keith Dorsa, President

x Ross Keith Dorsa, Individually

The Dorsa Family Revocable Trust, Established April 4, 2005

By: Katherine Ann Dorsa, Trustee

By: Ross Keith Dorsa, Trustee



BERTUS DROOGSMA
COMM. # 1762418
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires Aug. 19, 2011

ALL SIGNATURES MUST BE ACKNOWLEDGED.

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

State of California
County of __Santa Clara__

On __1-4-08__ before me, __Bertus Droogsma, Notary Public__
       Date                              Here Insert Name and Title of the Officer

personally appeared __Katherine Ann Dorsa__
                              Name(s) of Signer(s)

[Notary Seal: BERTUS DROOGSMA, COMM. # 1762418, NOTARY PUBLIC - CALIFORNIA, SANTA CLARA COUNTY, My Comm. Expires Aug. 19, 2011]

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                       Signature of Notary Public

———————————— **OPTIONAL** ————————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: __General Agreement of Indemnity__
Document Date: __1/2/08__ Number of Pages: __3__
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

[RIGHT THUMBPRINT OF SIGNER — Top of thumb here]

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

[RIGHT THUMBPRINT OF SIGNER — Top of thumb here]

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org Item #5907 Reorder: Call Toll-Free 1-800-876-6827

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Santa Clara

On 1-4-08 before me, Bertus Droogsma Notary Public
<br>_Here Insert Name and Title of the Officer_

personally appeared Ross Keith Dorsa
<br>_Name(s) of Signer(s)_

[Notary Seal: BERTUS DROOGSMA, COMM. # 1762418, NOTARY PUBLIC - CALIFORNIA, SANTA CLARA COUNTY, My Comm. Expires Aug. 19, 2011]

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _[signature]_
<br>_Signature of Notary Public_

_Place Notary Seal Above_

--- OPTIONAL ---

_Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document._

**Description of Attached Document**

Title or Type of Document: General Agreement of Indemnity

Document Date: 1/2/08    Number of Pages: 3

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer Is Representing: _____

[RIGHT THUMBPRINT OF SIGNER - Top of thumb here]

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer Is Representing: _____

[RIGHT THUMBPRINT OF SIGNER - Top of thumb here]

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org Item #5907 Reorder: Call Toll-Free 1-800-876-6827