SEDGWICK LLP
JAMES P. DIWIK (Bar No. 164016)
james.diwik@sedgwicklaw.com
JOEL M. LONG (Bar No. 226061)
joel.long@sedgwicklaw.com
333 Bush Street, 30th Floor
San Francisco, California 94104-2834
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Plaintiff
First National Insurance Company of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HSR GENERAL ENGINEERING CONTRACTORS, INC. doing business as HSR, INC., et al.,<br><br>Defendants. | CASE NO. 5:10-cv-03879-RS<br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:     January 12, 2012<br>Time:    1:30 p.m.<br>Judge:   Hon. Richard Seeborg<br>Location: San Francisco Courthouse<br>              Courtroom 3, 17th Floor |

SF/2549823v1

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION ........................................................................................................... 1

RELIEF SOUGHT .................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.   STATEMENT OF ISSUES TO BE DECIDED............................................................ 1

II.  INTRODUCTION......................................................................................................... 2

III. FACTS .......................................................................................................................... 2

   A.   The Indemnity Agreement .................................................................................. 2
       1. The Dorsas' Agreement to Indemnify FNICA........................................... 3
       2. FNICA's Right to Handle Claims ............................................................. 4
       3. Evidence of Liability and Damages .......................................................... 4
   B.   The Bonds ........................................................................................................... 4
   C.   Bond Claims........................................................................................................ 5
   D.   Claims Paid ......................................................................................................... 6
       1. Project by Project Summary of Claims Paid............................................. 7
           a. Bond No. 6633459 – Coyote Point Bay Trail Improvements.................................................................................. 7
           b. Bond No. 6500532 – Camino Arroyo Bridge Project, Phase II........................................................................................ 7
           c. Bond No. 6576833 – Jacques Gulch Reconstruction Project ....................................................................................... 7
           d. Bond No. 6576823 – Construct Soldier Pile Wall, etc. ................. 7
           e. Bond No. 6633445 – Landfills 8 & 10 and Graded Area 9 Remediation Project ............................................................ 7
           f. Bond No. 6576822 – Temporary Traffic Signal ............................ 7
           g. Total Paid to Payment Bond Claimants to Date ............................ 8
   E.   Attorney's Fees and Costs Incurred in Connection with Bond Claims................. 8

IV.  ARGUMENT................................................................................................................ 8
   A.   Legal Standard .................................................................................................... 8

  B.  FNICA Is Entitled to Summary Judgment Against the Dorsas for Breach of the Indemnity Agreement ....................................................................... 9

    1.  The Existence of an Indemnity Agreement ................................................ 10

    2.  FNICA's Performance Under the Indemnity Agreement ........................... 10

    3.  The Dorsas' Breach of the Indemnity Agreement ..................................... 11

    4.  FNICA's Damages ..................................................................................... 11

      a.  Prejudgment Interest and Attorney's Fees and Costs in Prosecuting This Action ................................................................. 12

V.  CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

Page

**Cases**

Allen v. Cedar Real Estate Group, LLP,
  236 F.3d 374 (7th Cir. 2001) .................................................................................................. 8

Anderson v. Liberty Lobby,
  477 U.S. 242 (1986) ................................................................................................................ 9

Beard v. Banks,
  548 U.S. 521 (2006) ................................................................................................................ 9

Buchalter v. Levin,
  252 Cal.App.2d 367 (1967) .................................................................................................. 10

Cal-Jones Properties v. Evans Pacific Corp.,
  216 Cal.App.3d 324 (1989) .................................................................................................... 9

Fidelity and Deposit Company of Maryland v. Whitson,
  187 Cal.App.2d 751 (1960) .................................................................................................. 10

Four Star Electric, Inc. v. F&H Construction,
  7 Cal.App.4th 1375 (1991) ................................................................................................... 10

General Ins. Co. of America v. Singleton,
  40 Cal.App.3d 439 (1974) .................................................................................................... 11

Gribalo, Jacobs, Jones & Assoc. v. Agrippina Versicherunges A.G.,
  3 Cal.3d 434 (1970) .............................................................................................................. 10

Hillman v. Leland E. Burns, Inc.,
  209 Cal.App.3d 860 (1989) .................................................................................................... 9

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1986) ................................................................................................................ 9

Myers Bldg. Inds., Ltd. v. Interface Tech., Inc.,
  13 Cal.App.4th 949 (1993) ..................................................................................................... 9

Reichert v. General Insurance Co. of America,
  68 Cal.2d 822 (1968) ............................................................................................................ 10

Smoketree-Lake Murray, Ltd. v. Mills Concrete Const. Co., Inc.,
  234 Cal.App.3d 1724 (1991) .................................................................................................. 9

**Statutes**

Cal. Civ. Code § 2772 ................................................................................................................... 9

Cal. Civ. Code § 3250 ................................................................................................................... 6

Cal. Civ. Code § 3287 ................................................................................................................... 6

1    Cal. Civ. Code § 3287(a) ........................................................................................................ 12

2    Civil L.R. 54 ........................................................................................................................... 12

3    Civil L.R. 7 ............................................................................................................................... 1

4    Fed. R. Civ. Proc. 56(a) ....................................................................................................... 1, 8

5    Fed. R. Civ. Proc. 59(e) ......................................................................................................... 12

## NOTICE OF MOTION

Please take notice that on January 12, 2012, at 1:30 p.m., in Courtroom 3 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, plaintiff First National Insurance Company of America ("FNICA") will move for summary judgment on its first cause of action for breach of contract or, in the alternative, for summary adjudication of the issue of the defendants' liability under the referenced contract.  This motion is made pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Rule 7 of the Civil Local Rules.  It is based on the memorandum of points and authorities below, the accompanying declarations of Christine Bartholdt, David Pikulin, and Joel M. Long, the file and record in this matter, and any evidence or argument that may be presented at the hearing on the motion.

## RELIEF SOUGHT

FNICA seeks an order entering judgment on its first cause of action for breach of contract against defendants Ross Keith Dorsa, Katherine Ann Dorsa, and The Dorsa Family Revocable Trust, Established April 4, 2005 (collectively, the "Dorsas"), jointly and severally, in the amount of $1,836,491.  (This amount excludes prejudgment interest and attorney's fees and costs in bringing this action, which FNICA will seek by way of a post-judgment motion.)  Alternatively, FNICA requests an adjudication of the Dorsas' liability under the referenced contract.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF ISSUES TO BE DECIDED

Whether the Dorsas materially breached the January 2, 2008 General Agreement of Indemnity for Contractors (the "Indemnity Agreement") executed by the Dorsas as part of the consideration for FNICA to issue surety bonds on behalf of Ross and Katherine Dorsa's construction company, HSR General Engineering Contractors, Inc. doing business as HSR, Inc. ("HSR").

Whether FNICA is entitled to a joint and several judgment against the Dorsas in the amount of $1,836,491.

1  II.     **INTRODUCTION**

2        This is a simple breach of contract case in which the material facts are not disputed.  HSR
3  is a construction company owned and operated by husband and wife Ross and Katherine Dorsa.
4  Before HSR filed for bankruptcy in August 2010, HSR was a prime contractor on public works
5  construction projects in Northern California.  Under California law, in order to be awarded
6  contracts for such projects, the prime contractor must provide the owner with surety bonds –
7  specifically, a performance bond guaranteeing completion of the project work, and a payment
8  bond guaranteeing payment to subcontractors and suppliers providing labor and materials to the
9  project.

10        FNICA is a surety.  FNICA, as surety, issued performance and payment bonds on behalf
11 of HSR, as principal, in connection with multiple projects.  In exchange, HSR and the Dorsas
12 executed the Indemnity Agreement.  Under the Indemnity Agreement, HSR and the Dorsas
13 promised to repay FNICA for all loss and expense incurred by FNICA under the bonds,
14 including, without limitation, payments to claimants under the bonds (i.e., HSR's unpaid
15 subcontractors and material suppliers), as well as attorney's fees and costs incurred in resolving
16 claims under the bonds.

17        In 2010, HSR experienced financial difficulties and failed to pay many of its
18 subcontractors and material suppliers and failed to complete at least one bonded project.  This led
19 to dozens of claims under FNICA's bonds and caused FNICA to incur millions of dollars of loss
20 and expense.  The fact and amount of the loss and expense incurred by FNICA is not disputed.
21 FNICA now seeks to recover these damages from the Dorsas pursuant to the express terms of the
22 Indemnity Agreement.

23 III.    **FACTS**

24       A.      **The Indemnity Agreement**

25       It is FNICA's ordinary business practice to require contractor/bond principals and
26 indemnitors (usually owners or officers of the contractor/bond principal) to execute indemnity
27 agreements as part of the consideration for FNICA to issue surety bonds on the contractor/bond
28 principal's behalf.  (Declaration of Christine Bartholdt in Support of Plaintiff's Motion for

1  Partial Summary Judgment ("Bartholdt Dec.") at para. 6.) On January 2, 2008, Ross and
2  Katherine Dorsa executed the Indemnity Agreement as officers of HSR, as individuals, and in
3  their capacities as trustees of The Dorsa Family Revocable Trust, Established April 4, 2005.
4  (Bartholdt Dec. at para. 7.) The Indemnity Agreement remains in full force and effect, and the
5  Dorsas have not terminated their participation or obligations under the Indemnity Agreement.
6  (Bartholdt Dec. at para. 9.)[1]

7  The Indemnity Agreement expressly provides that the Dorsas executed it "in
8  consideration of" and "as an inducement" for FNICA to issue surety bonds on behalf of HSR.
9  The Dorsas agreed to "jointly and severally" bind themselves to the terms and conditions of the
10 Indemnity Agreement. The Dorsas warranted that each of them was "specifically and
11 beneficially interested in the obtaining of each Bond." (See Paragraph 6 under the "General
12 Provisions" section on page 2 of the Indemnity Agreement.)[2] The Indemnity Agreement
13 provides that it "is to be liberally construed so as to protect, exonerate and indemnify the Surety."
14 (See Paragraph 11 under the "General Provisions" section on page 3 of the Indemnity
15 Agreement.)[3]

16 **1.    <u>The Dorsas' Agreement to Indemnify FNICA</u>**

17 Under the Indemnity Agreement, the Dorsas agreed to pay to FNICA, upon demand, the
18 following: "All loss, cost and expenses of whatsoever kind and nature, including court costs,
19 reasonable attorneys fees . . . consultant fees, investigative costs and any other losses, costs or
20 expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account
21 of any Default under this agreement by any of the Undersigned." (See Paragraph 1 under the
22 "Indemnity to Surety" section on page 1 of the Indemnity Agreement.)[4]

---

[1] A copy of the Indemnity Agreement is attached to the Bartholdt Dec. as Exhibit A.
[2] The term "Bond" is defined to include "[a]ny and all bonds . . . executed by Surety."
[3] The term "Surety" is defined to include FNICA. (See the "Definitions" section on page 1 of the Indemnity Agreement.)
[4] As is relevant to this motion, the term "Default" includes HSR's breach or abandonment of any bonded contract, HSR's failure to pay bills in connection with any bonded contract, HSR becoming insolvent, and HSR's or the Dorsas' breach of or failure to perform or comply with any provision of the Indemnity Agreement.

### 2. FNICA's Right to Handle Claims

The Indemnity Agreement sets forth FNICA's rights with respect to handling bond claims. FNICA has "the exclusive right for itself and the [Dorsas] to determine in its sole and absolute discretion whether any claim or suit upon any bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed." (See Paragraph 1 under the subsection starting with the language "With respect to claims against Surety" on page 1 of the Indemnity Agreement.) Further, FNICA may "incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has issued any Bond." (See Paragraph 2 under the same subsection on page 1 of the Indemnity Agreement.) Finally, "[FNICA's] determination in its sole and absolute discretion of the foregoing shall be final and conclusive upon the Undersigned." (See Paragraph 3 under the under the same subsection on page 1 of the Indemnity Agreement.)

### 3. Evidence of Liability and Damages

The Indemnity Agreement also sets forth the evidence required to determine both the fact and the amount of the Dorsas' liability to FNICA: "An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned." (See Paragraph 4 under the under the same subsection on page 1 of the Indemnity Agreement.) In accordance with this provision, FNICA's motion is supported by the declaration of its Assistant Vice President, David Pikulin, itemizing the loss and expense incurred by FNICA.

### B. The Bonds

As is relevant to this motion, FNICA issued surety bonds (collectively, the "Bonds") on HSR's behalf in connection with the following construction projects (collectively, the "Bonded Projects"):[5]

---

[5] Copies of the Bonds are attached to the Bartholdt Dec. as Exhibits B-G.

|  |  |
|---|---|
| **Bond No.:** | **6633459** |
| Project: | Coyote Point Bay Trail Improvements |
| Obligee: | County of San Mateo |
| Penal Sum: | Performance Bond:  $720,173 |
|  | Payment Bond:  $720,173 |

|  |  |
|---|---|
| **Bond No.:** | **6500532** |
| Project: | Camino Arroyo Bridge Project, Phase II |
| Obligee: | City of Gilroy |
| Penal Sum: | Performance Bond:  $4,877,862 |
|  | Payment Bond:  $4,877,862 |

|  |  |
|---|---|
| **Bond No.:** | **6576833** |
| Project: | Jacques Gulch Restoration Project |
| Obligee: | Santa Clara Valley Water District |
| Penal Sum: | Performance Bond:  $1,877,809 |
|  | Payment Bond:  $1,877,809 |

|  |  |
|---|---|
| **Bond No.:** | **6576823** |
| Project: | Construct Soldier Pile Wall, etc. |
|  | (05-0P8104. 05-SCr-17-7.0/7.3) |
| Obligee: | State of California, Department of Transportation |
| Penal Sum: | Performance Bond:  $757,212.50 |
|  | Payment Bond:  $1,514,425 |

|  |  |
|---|---|
| **Bond No.:** | **6633445** |
| Project: | Landfills 8 & 10 and Graded Area 9 Remediation Project |
| Obligee: | The Presidio Trust |
| Penal Sum: | Performance Bond:  $3,192,308 |
|  | Payment Bond:  $3,192,308 |

|  |  |
|---|---|
| **Bond No.:** | **6576822 (payment bond only)** |
| Project: | State of California, Department of Transportation |
| Contract: | Temporary Traffic Signal |
|  | Caltrans Contract No. 04-A3271[6] |
| Penal Sum: | Payment Bond:  $190,000 |

### C. <u>Bond Claims</u>

Beginning in early 2010 and continuing into 2011, numerous HSR subcontractors and suppliers submitted claims under FNICA's payment bonds based on HSR's alleged failure to pay them for labor and materials provided to the Bonded Projects. These claims included multiple lawsuits filed by unpaid subcontractors and suppliers against FNICA as HSR's payment bond surety. Further, on one of the Bonded Projects, namely State of California, Department of Transportation, Construct Soldier Pile Wall, etc. (the "Caltrans Project"), the project owner

---

[6] This project is mistakenly listed on Bond No. 6576822 as Caltrans Contract No. 04-A3140. There is no dispute that the bond applies to Caltrans Contract No. 04-A3271.

1  submitted a claim under FNICA's performance bond after HSR failed and refused to complete
2  the work on the project. (Bartholdt Dec. at para. 12.)
3      FNICA investigated each claim. Due to the volume of the claims, FNICA retained
4  outside legal counsel experienced in surety matters, Sedgwick LLP (formerly Sedgwick, Detert,
5  Moran & Arnold LLP ("Sedgwick"), to assist. (Bartholdt Dec. at para. 13.) In the course of
6  FNICA's investigation of claims, FNICA and/or Sedgwick communicated with HSR and the
7  claimants to determine the validity of the claims and to verify the amounts due and owing to the
8  claimants. (Bartholdt Dec. at para. 15.) As to all of the payment bond claims at issue, HSR
9  confirmed that it had not paid the claimants the amounts being claimed. As to the majority of the
10 payment bond claims at issue, HSR confirmed that the amounts paid by FNICA were due and
11 owing to the claimants. In the few cases in which mathematical discrepancies or other minor
12 issues were identified by HSR or FNICA, FNICA and/or Sedgwick analyzed the documents and
13 information provided by HSR and the claimants to resolve the issues. As to the performance
14 bond claim in connection with the Caltrans Project, HSR confirmed that it had failed to complete
15 and was unable to complete the work on the project. (Bartholdt Dec. at para. 16.) In order to
16 settle certain claims, FNICA was required to pay attorney's fees, costs and interest in addition to
17 the principal amounts of the claims based on the claimants' statutory entitlement to these
18 additional items.[7] (Bartholdt Dec. at para. 18.) For all claims paid, FNICA conducted an
19 investigation and made good faith determination that the claims were valid and the amounts paid
20 were due and owing to the claimants. (Bartholdt Dec. at para. 14 and 19.)
21     **D.**    **Claims Paid**
22     FNICA ultimately paid the claims as summarized below and as itemized in detail in the
23 accompanying declarations of FNICA Home Office Counsel, Christine Bartholdt, and FNICA
24 Assistant Vice President, David Pikulin. For each claim paid, FNICA obtained the claimant's
25 written release of claims against First National and assignment of claims against HSR.
26
27
28     [7] See California Civil Code sections 3250 (attorney's fees) and 3287 (interest).

1. **Project by Project Summary of Claims Paid**

   a. **Bond No. 6633459 – Coyote Point Bay Trail Improvements**

   To date, FNICA has investigated, resolved, and paid ten payment bond claims on this project, with payments to claimants totaling $221,270.87.

   b. **Bond No. 6500532 – Camino Arroyo Bridge Project, Phase II**

   To date, FNICA has investigated, resolved, and paid nine payment bond claims on this project, including five lawsuits, with payments to claimants totaling $564,065.

   c. **Bond No. 6576833 – Jacques Gulch Reconstruction Project**

   To date, FNICA has investigated, resolved, and paid twelve payment bond claims on this project, with payments to claimants totaling $128,277.95.

   d. **Bond No. 6576823 – Construct Soldier Pile Wall, etc.**

   To date, FNICA has investigated, resolved, and paid eight payment bond claims on this project, including one lawsuit, with payments to claimants totaling $373,884.62.  FNICA has also investigated the project owner's performance bond claim after HSR failed to complete the project and finalized a plan to complete the work with a replacement contractor.[8]

   e. **Bond No. 6633445 – Landfills 8 & 10 and Graded Area 9 Remediation Project**

   To date, FNICA has investigated, resolved, and paid 16 payment bond claims on this project, including one lawsuit, with payments to claimants totaling $303,472.53.

   f. **Bond No. 6576822 – Temporary Traffic Signal**

   To date, FNICA has investigated, resolved, and paid two payment bond claims on this project, with payments to claimants totaling $16,224.85.

---

[8] The project completion work has not yet been performed and, therefore, FNICA's completion costs are not included as part of this motion.  FNICA reserves the right to file a separate action to collect these completion costs and any related expenses from the Dorsas as permitted under the Indemnity Agreement:  "Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety."  (See the second paragraph at the top of page 2 of the Indemnity Agreement.)

### g. Total Paid to Payment Bond Claimants to Date

The total of the payments discussed in Paragraphs D(1)(a) to (f) immediately above (counting whole dollars only) is $1,607,192. (Bartholdt Dec. at para. 23-28; Declaration of David Pikulin in Support of Plaintiff's Motion for Partial Summary Judgment ("Pikulin Dec.") at para. 9.)

### E. Attorney's Fees and Costs Incurred in Connection with Bond Claims

FNICA's outside legal counsel, Sedgwick, was retained on May 17, 2010. (Bartholdt Dec. at para. 13.) Since that time, Sedgwick has performed various tasks related to HSR, the Dorsas, and the Bonds, including, without limitation: (a) claim investigation, analysis, and resolution; (b) litigation handling; (c) efforts to protect contract balances withheld by project owners; (d) efforts to achieve a consensual resolution regarding the defendants' repayment obligation to FNICA before the instant lawsuit was filed; (e) work on behalf of FNICA as a creditor in the Chapter 11 bankruptcy filed by HSR; and (f) defense of the adversary proceeding filed by HSR in connection with its bankruptcy.[9] (Declaration of Joel M. Long in Support of Plaintiff's Motion for Partial Summary Judgment ("Long Dec.") at para. 7.) Through October 31, 2011, FNICA has incurred attorney's fees and costs in the total amount of $229,299.33 for the work performed by Sedgwick. (Pikulin Dec. at para 16.; Long Dec. at para. 12-16.)

## IV. ARGUMENT

### A. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure permits summary judgment as to individual claims. Here, FNICA seeks summary judgment against the Dorsas on FNICA's first cause of action for breach of the Indemnity Agreement.[10]

---

[9] On August 23, 2010, HSR filed a Chapter 11 bankruptcy petition in the United States District Court for the Northern District of California, Case No. 10-58737. (Long Dec. at para. 5.) On September 24, 2010, after being notified of the bankruptcy, FNICA filed a notice of dismissal of HSR without prejudice in the present action.

[10] In diversity cases, state law governs interpretation of contracts. See, e.g., Allen v. Cedar Real Estate Group, LLP, 236 F.3d 374, 380 (7th Cir. 2001). Here, California law governs the

Summary judgment must be granted where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. See Beard v. Banks, 548 U.S. 521, 529 (2006). Only disputes regarding facts which might affect the outcome of the suit under the governing law may preclude the entry of summary judgment. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The dispute must be "genuine" – in other words, the court must find that the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Thus, to avoid summary judgment, the nonmoving party must show something more than a metaphysical doubt about the facts. Matsushita, 475 U.S. at 586. "If the evidence [proffered by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

### B. **FNICA Is Entitled to Summary Judgment Against the Dorsas for Breach of the Indemnity Agreement**

Indemnity is the obligation of one party to protect another party from loss or damage. See California Civil Code section 2772; Smoketree-Lake Murray, Ltd. v. Mills Concrete Const. Co., Inc., 234 Cal.App.3d 1724, 1734-35 (1991); Cal-Jones Properties v. Evans Pacific Corp., 216 Cal.App.3d 324, 328 (1989). Indemnity may arise by contract. See id.

An indemnity agreement, like any other contract, is interpreted according to the plain language of the agreement and the parties' intent as reflected in the agreement. Myers Bldg. Inds., Ltd. v. Interface Tech., Inc., 13 Cal.App.4th 949, 968 (1993); Smoketree-Lake, 234 Cal.App.3d at 1737; Hillman v. Leland E. Burns, Inc., 209 Cal.App.3d 860, 866 (1989). A clause in an indemnity contract that contains the words "indemnify" and "hold harmless" obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third-parties. Myers Bldg. Inds., 13 Cal.App.4th at 969.

---

interpretation of the Indemnity Agreement in light of the fact that the Dorsas entered into and breached the Indemnity Agreement in California. See id.

California courts have long recognized a surety's right to be indemnified under a written indemnity agreement.  See, e.g., Fidelity and Deposit Company of Maryland v. Whitson, 187 Cal.App.2d 751, 759 (1960).  This includes a surety's right to be indemnified for attorney's fees and costs incurred in investigating and resolving claims under its bonds.  See Gribalo, Jacobs, Jones & Assoc. v. Agrippina Versicherunges A.G., 3 Cal.3d 434, 447-49 (1970); Buchalter v. Levin, 252 Cal.App.2d 367, 371 (1967).

The necessary elements to establish a valid cause of action for breach of an indemnity agreement are:  (1) existence of an indemnity agreement; (2) performance under the indemnity agreement; (3) breach of the indemnity agreement; and (4) resulting damage.  See Reichert v. General Insurance Co. of America, 68 Cal.2d 822, 830 (1968); Four Star Electric, Inc. v. F&H Construction, 7 Cal.App.4th 1375, 1379 (1991).  As discussed below, each of these elements is present in this case.

### 1.     The Existence of an Indemnity Agreement

It is undisputed that the Dorsas executed the Indemnity Agreement.  In doing so, the Dorsas expressly warranted that they were "specifically and beneficially interested in the obtaining of [surety bonds]" from FNICA.  The Dorsas also expressly agreed that the Indemnity Agreement would "be liberally construed so as to protect, exonerate and indemnify [FNICA]."

### 2.     FNICA's Performance Under the Indemnity Agreement

At the Dorsas' request, FNICA issued the Bonds on HSR's behalf.  With respect to claims under the Bonds, the Indemnity Agreement provides FNICA with the "excusive right" to settle claims in FNICA's "sole and absolute discretion."  FNICA's claim determinations, in turn, are deemed to be "final and conclusive" as to the Dorsas.

Here, FNICA thoroughly investigated all claims received under the Bonds.  In every instance, FNICA solicited documents and information from both the claimant and from HSR and then performed its own independent, objective analysis as to the merit and amount of the claim. In every instance, HSR confirmed that it had not paid the subcontractors and suppliers in question, and in almost every instance HSR confirmed the validity of the claims and the amounts due and owing to the claimants that were ultimately paid by FNICA.  Throughout this process,

1 FNICA notified HSR and the Dorsas before paying claims in order to give them the opportunity
2 to resolve the claims themselves.  When HSR and the Dorsas failed to do so, FNICA satisfied its
3 contractual and statutory obligations as a public works performance and payment bond surety by
4 settling the claims on the best terms available to it.

### 3. The Dorsas' Breach of the Indemnity Agreement

6 As discussed previously, the Indemnity Agreement requires the Dorsas, upon demand, to
7 pay FNICA all loss, costs and expenses, including attorney's fees, incurred by FNICA by reason
8 of having executed any of the Bonds or due to any "Default" under the Indemnity Agreement.
9 Here, the "Defaults" under the Indemnity Agreement include HSR's breach and abandonment of
10 bonded contract for the Caltrans Project, HSR's failure to pay bills in connection with all of the
11 bonded contracts listed above, HSR becoming insolvent and filing for bankruptcy, and HSR's
12 and the Dorsas' failure to comply with the provisions of the Indemnity Agreement.  Despite
13 FNICA's demands, the Dorsas have failed and refused to indemnify FNICA for its loss, costs and
14 expenses, thus breaching the Indemnity Agreement.

### 4. FNICA's Damages

16 As a result of the Dorsas' breach of the Indemnity Agreement, FNICA has incurred
17 damages in the form of monies paid to HSR's subcontractors and suppliers to resolve the claims
18 made under the Bonds, as well as attorney's fees and costs incurred in investigating and settling
19 the claims under the Bonds and related matters.  These damages total $1,836,491 (bond claims
20 paid to date in the amount of $1,607,192 plus attorney's fees and costs through October 31, 2011,
21 in the amount of $229,299 (counting whole dollars only)).

22 Under the Indemnity Agreement:  "An itemized statement of loss and expense incurred by
23 Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of
24 the liability of [the Dorsas] to Surety in any claim or suit by Surety against [the Dorsas]."
25 The accompanying declaration of FNICA's Assistant Vice President, David Pikulin, provides
26 this itemized statement and therefore constitutes prima facie evidence of both the fact and
27 amount of FNICA's damages.  See General Ins. Co. of America v. Singleton, 40 Cal.App.3d 439,
28 443-44 (1974) (enforcing prima facie evidence clause in written indemnity agreement).

### a. **Prejudgment Interest and Attorney's Fees and Costs in Prosecuting This Action**

Under both the Indemnity Agreement (see Paragraph 1 under the "Indemnity to Surety" section on page 1 of the Indemnity Agreement) and applicable law (California Civil Code section 3287(a)), FNICA is entitled to recover prejudgment interest in addition to the damages discussed above. Further, FNICA is entitled to recover its attorney's fees and costs in prosecuting this action on the grounds that the Dorsas' breach of the Indemnity Agreement constitutes a "Default" under the Indemnity Agreement, and that the Dorsas are liable for attorney's fees and costs arising from any such "Default." FNICA will file a post-judgment motion for prejudgment interest and attorney's fees and costs pursuant to Civil L.R. 54 and Rule 59(e) of the Federal Rules of Civil Procedure.

## V. **CONCLUSION**

For the reasons discussed above, FNICA respectfully requests that the Court enter judgment against the Dorsas, jointly and severally, in the amount of $1,836,491 on FNICA's first cause of action for breach of the Indemnity Agreement. Alternatively, FNICA requests an adjudication of the Dorsas' liability under the Indemnity Agreement.

DATED: December 7, 2011    SEDGWICK LLP

By: /s/ Joel M. Long
    Joel M. Long
    Attorneys for Plaintiff
    First National Insurance Company of America